Of Counsel:
CLAY IWAMURA PULICE & NERVELL

CARLOS D. PEREZ-MESA, JR.     #5448
JASON S. KASAMOTO             #11376
Topa Financial Center, Bishop Street Tower
700 Bishop Street, Suite 2100
Honolulu, Hawaii 96813
Telephone:(808) 535-8400
Facsimile: (808) 535-8446
Email: cperez-mesa@paclawteam.com
Email: jkasamoto@paclawteam.com

Attorneys for Plaintiff
NICHOLAS E. HANEY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| NICHOLAS E. HANEY, | CASE NO. |
|---|---|
| Plaintiff, | |
| vs. | COMPLAINT; EXHIBIT "A" |
| ALEJANDRO N. MAYORKAS, SECRETARY OF THE DEPARTMENT OF HOMELAND SECURITY, IMMIGRATION AND CUSTOMS ENFORCEMENT AGENCY, | |
| Defendant. | |

# COMPLAINT

COMES NOW Plaintiff NICHOLAS E. HANEY ("Plaintiff"), by and through his attorneys, Clay Iwamura Pulice & Nervell, and for his complaint against Defendant ALEJANDRO N. MAYORKAS, Secretary of the DEPARTMENT OF HOMELAND SECURITY, IMMIGRATION AND CUSTOMS ENFORCEMENT AGENCY , ("Defendant") alleges and avers as follows:

## INTRODUCTION

1. This is a complaint for discrimination and retaliation at Plaintiff's place of employment, Department of Homeland Security, Immigration and Customs Enforcement Agency ("ICE").

2. ICE gave Plaintiff a reasonable accommodation ("RA") for 5 years from 2013 until it had a staffing shortage in 2018. In that year, ICE forced Plaintiff to work at a position with duties that were against his medical restrictions, jeopardizing his health, and violating his RA. Some of the duties that ICE assigned Plaintiff was at the very building, 595 Ala Moana Boulevard, Honolulu, Hawaii ("Bldg 595"), that caused his sickness. As a result of ICE's actions, Plaintiff's medical condition worsened.

3. Plaintiff also faced disability discrimination when he was removed from a foreign escort trip, despite being available, which caused him to lose out on an overtime opportunity.

THE PARTIES

4. Plaintiff NICHOLAS E. HANEY is and was, at all times relevant hereto, a resident of the City and County of Honolulu, State of Hawaii.

5. Upon information and belief, Defendant ALEJANDRO N. MAYORKAS ("Defendant") is, at all times relevant hereto, the Secretary of the U.S. Department of Homeland Security, and a resident of the District of Columbia, United States of America, and subject to the jurisdiction of the Court.

JURISDICTION AND VENUE

6. Pursuant to 28 U.S.C. § 1331, this United States Federal District Court has subject matter jurisdiction over this action because the cause of action arises under federal law. Specifically, this Complaint stems from a failed appeal to the U.S. Equal Employment Opportunity Commission (EEOC).

7. Pursuant to 28 U.S.C. § 1391(b)(1), this United States Federal District Court is the proper venue because Defendant is a resident of this judicial district.

PROCEDURAL BACKGROUND

8. Plaintiff NICHOLAS E. HANEY has exhausted his administrative remedies at the EEOC.

9. Plaintiff filed an appeal with the EEOC pursuant to 29 C.F.R. § 1614.403(a), from the Immigration and Customs Enforcement Agency's (hereinafter, the "Agency") January 11, 2022, final order concerning his equal

employment opportunity ("EEO") complaint alleging employment discrimination in violation of Section 501 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), as amended, 29 U.S.C. § 791 et seq. The EEOC affirmed the Agency's final order.

10. In its appeal decision, the EEOC informed Plaintiff that he has the right to file a civil action in an appropriate United States District Court within ninety (90) calendar days from the date that he receives the decision. Plaintiff received the decision on March 27, 2023. A true and correct copy of that appeal decision is attached as **Exhibit "A."**

11. This Complaint is being filed within 90 days of Plaintiff's receipt of the EEOC appeal decision.

## FACTUAL BACKGROUND

12. Plaintiff hereby re-alleges and incorporates by reference, as if fully set forth herein, all of the allegations contained in paragraphs 1 through 11 above.

13. Plaintiff was a longstanding federal employee who had 19 years of service with Department of Homeland Security, Immigration and Customs Enforcement ("ICE"). Plaintiff worked as an ICE Enforcement and Removal Operations ("ERO") Deportation Officer from October 2006 until November 10, 2018, when he retired for medical reasons.

14. During Plaintiff's employment with ICE, he was diagnosed with life-threatening illnesses: (1) lifelong condition of Chronic Myeloid (bone marrow)

4

Leukemia; (2) with occupational induced asthma; and with (3) Chronic Obstructive Pulmonary Disease ("COPD") in 2013.

15. The genesis of Plaintiff's health issues stems from his work with ICE in Bldg 595. He was highly sensitive to mold, and other allergens that were abundant in Bldg 595. When Plaintiff worked in Bldg 595, it exasperated his asthma, COPD, allergies, and worsened his chemotherapy side effects such as his headaches, nausea and body aches. In addition, he had trouble breathing in Bldg 595, and had chest pains.

16. Plaintiff's exposure to mold and allergens in Bldg 595 led to him being rushed to the emergency room in 2013. Shortly after this harrowing experience, Plaintiff's doctors advised him to stay away from Bldg 595 because they believed Plaintiff's symptoms were related to occupational exposure. In fact, one of Plaintiff's doctors opined that his symptoms were due to the high amounts of visible mold in Bldg 595.

17. In April 2013, Plaintiff submitted an RA request to his supervisor. He explained that he "had serious allergic type reactions today in my workspace, which included chest pain, difficulty breathing tightness and uncontrolled coughing. This has been happening for some time now and seems to always improve when I remove myself from [Bldg 595]." Plaintiff's first line supervisor Joy Tokunaga, Kathy Makaena ("Makaena"), and second line supervisor Michael Samaniego

("Samaniego") were all informed of his request. Plaintiff requested to work outside of Bldg 595, and submitted recommendations from his doctors to reduce his occupational exposure.

18.  As a result of Plaintiff's RA request, he was allowed to perform his duties away from Bldg. 595. In 2015, Plaintiff was assigned to the U.S. Marshals Fugitive Task Force office at 300 Ala Moana Boulevard, Honolulu, HI 96850 (the "Marshals' Office"), until he was reassigned to Control duties at Bldg 595 on October 1, 2018. The RA was highly effective, as Plaintiff's health improved because he was not exposed to the contaminates that made him sick. He also received an overall rating of excellent in his 2018 evaluation.

19.  In July 2018, Plaintiff was asked to return to work at Bldg 595 due to a staffing shortage. For the two days that Plaintiff was there, he experienced chest tightening, nausea, lightheadedness, breathing problems, sinuses bleeding. His lungs burned, making him feel weak and run down. This labored his breathing, which caused sleeping problems.

20.  Plaintiff let all of his supervisors know his health was declining. He told supervisors Makaena and Samaniego that his doctor prescribed him an epinephrine auto injector (EpiPen) because of his serious allergic reactions he had in Bldg 595. He told them both that his immune system was very weak, and he was still taking

daily chemotherapy medication for his leukemia. In addition, Plaintiff spoke to his first line supervisor, Tai Chow ("Chow") numerous times about his health issues.

21.  Plaintiff was desperate to stay out of Bldg 595, and he was afraid for his life. Plaintiff shared his doctors' notes from 2013, the OSHA report, and gave as much information to Chow regarding his medical condition. As a result of Plaintiff's discussions with his supervisors, Makaena allowed him to return to the Marshals' Office work full time until he was ordered to return to Bldg 595 in October 2018.

22.  Just two months after Plaintiff's incident in July 2018, ICE had a staffing shortage again. In September 2018, only two officers were assigned Control Officer duties. Plaintiff along with Beverly Saludo ("Saludo") were assigned Control Officer duties via email by Makaena. Henry Kaufman ("Kaufman") replaced Plaintiff's position at the Marshal's Office, as the new Task Force Officer ("TFO"). Plaintiff's training of Control Officer duties were at Bldg 595. Samaniego stated that Plaintiff "was changed from a Task Force Officer to a Control Officer."

23.  Despite ICE's possession of Plaintiff's medical notes about his doctors recommending for him to stay away from Bldg 595, Plaintiff was ordered to train and work there. While working in Bldg 595 at this time, Plaintiff experienced the same symptoms he had in July. His sinuses started bleeding, his lungs burned causing breathing problems, and his headaches, nausea, and body aches from his

chemotherapy medication were severely exacerbated. His bleeding stopped on October 24, 2018.

24. From October 1, 2018, to October 4, 2018, Plaintiff trained, and worked in Bldg 595. He was unable get away from Bldg 595 because his work duties had to be performed in Bldg 595. It was not until sometime after October 4, 2018, where Chow set up a meeting with Plaintiff, and Saludo to split up the duties to allow Plaintiff some time away from Bldg 595. At that meeting, Chow told Plaintiff to try to perform Control duties at the Marshals' Office. However, that was just not realistic because most of the Control Officer's duties must be performed at Bldg 595. ICE alleges that Plaintiff's Control Officer duties could be done remotely from the Marshals' Office.

25. On October 3, 2018, Plaintiff submitted a formal RA request to ICE's Office of Diversity and Civil Rights, Civil Liberties Division ("ODCR"). On October 26, 2018, ODCR requested that Chow provide additional information, which he did on October 30, 2018.

26. That same day, ODCR told Chow that the next step in the process was to have an interactive meeting to discuss the RA request. The interactive discussion occurred over the phone on November 2, 2018, but only with ODCR and Chow. Plaintiff never received a response from ODCR until he retired on November 10, 2018.

27. Meanwhile, on October 16, 2018, Plaintiff was assigned a foreign escort detail trip to Micronesia that was scheduled to depart on November 3, 2018. On October 19, 2018, Plaintiff's travel arrangements were completed. On or around October 18, 2018, Plaintiff gave Chow a note from Dr. Timothy McLaughlin, who excused Plaintiff from work from October 18, 2018, to November 2, 2018. Later on October 19, 2018, Chow called Plaintiff informing him he was being removed from the foreign escort because of his extended leave. Chow said Plaintiff was removed to "minimize the risk of having to cancel 2 removal[s] if you were not able to return to work after an extended period of leave, it was our only option." Chow and Samaniego made the decision to remove Plaintiff.

28. Plaintiff assured Chow he was able to complete the detail, and that he was qualified and eligible to perform the duties required. He explained his leave was requested only so he would be away from Bldg 595 that caused his disability.

29. ICE made its decision to remove Plaintiff despite not having any medical expertise on whether Plaintiff would be absent beyond November 2, 2018, what was listed in his doctor's note. ICE did not ask for any updated medical notes from Plaintiff asking to clarify if Plaintiff's sick leave would extend beyond November 2, 2018. Plaintiff stated that he strongly disagreed with the decision to pull him off the detail and felt he was being retaliated against.

30. On October 23, 2018, Plaintiff filed a Step 1 grievance that was submitted to Chow. Chow responded on October 30, 2018.

31. On October 22, 2018, Plaintiff contacted an Equal Employment Opportunity ("EEO") Counselor.

32. On December 18, 2018, U.S. Immigration and Customs Enforcement (ICE) notified Plaintiff of the completion of the EEO counseling, and of Plaintiff's right to file a formal complaint.

33. On December 27, 2018, Plaintiff timely filed the formal complaint.

34. On October 7, 2019, ICE forwarded Plaintiff a copy of the Investigative File, providing Plaintiff a notice of his right to request a hearing before an EEOC Administrative Judge ("AJ") or, alternatively, to receive a Final Agency Decision.

35. On November 4, 2019, Plaintiff filed a request for a hearing before an EEOC AJ.

36. On December 15, 2021, an AJ from the EEOC's Los Angeles District Office issued a decision on the complaint without a hearing, pursuant to 29 C.F.R. § 1614.109(g). The AJ concluded Plaintiff failed to prove he was discriminated against as alleged.

37. On December 16, 2021, Office for Civil Rights and Civil Liberties ("CRCL") received the AJ's decision.

38. On February 18, 2022, Plaintiff submitted his appeal.

39. On March 27, 2023, the EEOC affirmed the Agency's final order adopting the AJ's decision.

COUNT I
(Failure to Provide Reasonable Accommodations Under the ADA)

40. Plaintiff hereby re-alleges and incorporates by reference, as if fully set forth herein, all of the allegations contained in paragraphs 1 through 39 above.

41. It is undisputed that Plaintiff was a qualified individual with a disability who could perform the essential duties of his job.

42. ICE granted Plaintiff a reasonable accommodation in 2013 to work somewhere away from Bldg. 595. Indeed, throughout Plaintiff's tenure at ICE, his medical restriction as instructed by his doctors remained the same –to avoid Bldg. 595. However, due to staffing shortages, Plaintiff was assigned to Control Officer duties at Bldg. 595 in July 2018 and October 2018.

43. ICE blatantly disregarded Plaintiff's medical vulnerabilities for the sake of its operations. He was forced to work in very place that made him severely sick.

44. As a result of ICE's callous actions, Plaintiff's medical condition worsened.

45. ICE also endangered Plaintiff's life and consequently, he had no choice but to medically retire.

/ / /

11

## COUNT II
### (Employment Retaliation)

46. Plaintiff hereby re-alleges and incorporates by reference, as if fully set forth herein, all of the allegations contained in paragraphs 1 through 45 above.

47. It is clear that Plaintiff sent emails and had conversations with his supervisors complaining about his work assignments at Bldg. 595 because of his medical restriction.

48. Plaintiff asked for ICE to approve of his sick leave and the next day, Chow notified Plaintiff that he got removed from the November 3, 2018 foreign escort.

49. The timing of ICE's actions is indicative of its discrimination against Plaintiff.

50. Moreover, because ICE did not take appropriate and timely action on Plaintiff's October 2018 request for a reasonable accommodation, Plaintiff was forced to retire for medical reasons, at an earlier date than his regular retirement would have been, i.e., November 25, 2023.

51. ICE claims that Plaintiff was reassigned because his medical documentation was unclear about when he could return from sick leave. However, Plaintiff's medical note was specific as to the dates Plaintiff was not able to work – October 18 to November 2, 2018.

52. Plaintiff was able to make the foreign escort assignment that was set to start on November 3, 2018. ICE's rationale for removing Plaintiff is not legitimate. ICE's decision is suspect and tends to show that ICE was motived not by reason but by discriminatory animus.

53. ICE made an unqualified medical opinion in making its decision not based on any objective medical information.

54. It is uncontroverted that ICE did not ask Plaintiff for a clarification of the medical certificate, nor did ICE give Plaintiff an opportunity to provide a supplemental certificate to clarify his return-to-work date.

55. All in all, ICE's reason for removing Plaintiff from the November 3 foreign escort was a pretext for discrimination.

## COUNT III
### (Harassment)

56. Plaintiff hereby re-alleges and incorporates by reference, as if fully set forth herein, all of the allegations contained in paragraphs 1 through 55 above.

57. Plaintiff's supervisors were dismissive of his health conditions evincing their *animus* towards Plaintiff's disability.

58. Plaintiff was subjected to harassment when he was assigned duties that required him to be at Bldg 595, and removed from the foreign escort detail. Working at Bldg 595 endangered Plaintiff and negatively affected his health. ICE had no legitimate reason for removing Plaintiff from the detail.

59. ICE failed to accommodate Plaintiff's disability and that in itself demonstrates discriminatory *animus* that is severe and was pervasive.

60. In July 2018, when Plaintiff was ordered to work in Bldg 595, he provided Chow a letter from his doctor that stated that he had severe allergies and associated leukemia and he was experiencing a great deal of asthmatic symptoms as a result of working at Bldg 595. His sinuses were bleeding and his chemotherapy side effects were seriously exacerbated. His doctor strongly recommended that he not work in Bldg 595.

61. Plaintiff told Chow numerous times he was afraid for his life and even submitted OSHA documents showing how bad the mold was at the ICE building. In response, Chow just laughed and did not appear to take Plaintiff's complaints seriously.

62. In 2013, after Plaintiff went to the ER after working in Bldg 595, Samaniego downplayed the seriousness of Plaintiff's situation, and berated Plaintiff in front of employees during meetings. When Plaintiff told Samaniego he could not breathe in Bldg 595, Samaniego told Plaintiff mold cannot make you sick.

63. Plaintiff's supervisors' dismissiveness was severe and pervasive that Plaintiff, as a reasonable person, considered intimidating, hostile, and abusive.

64. As a result of ICE's callous actions, Plaintiff's medical condition worsened. ICE endangered Plaintiff's life and consequently, he medically retired.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff NICHOLAS E. HANEY prays that this Court:

A.  Enter judgment in favor of Plaintiff and against Defendant for discrimination against Plaintiff in an employment context;

B.  An award to Plaintiff for general, special and compensatory damages including, but not limited to, lost wages and benefits, in such amount as will reasonably compensate him for his losses;

C.  Award Plaintiff his costs, attorneys' fees, and non-taxable expenses in this action; and

D.  Grant Plaintiff such other and further relief as the Court deems just and proper.

DATED:  Honolulu, Hawaii, June 24, 2023.

*/s/ Carlos D. Perez-Mesa, Jr.*
CARLOS D. PEREZ-MESA, JR.
JASON S. KASAMOTO
Attorneys for Plaintiff
NICHOLAS E. HANEY